Stanley SHEFTIC, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 571-E.

United States District Court
N. D. West Virginia.

Feb. 13, 1969.

Jack R. Nuzum, Henry Higginbotham, Elkins, W. Va. (both court-appointed), for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

On October 8, *1941*, the Petitioner was convicted of breaking and entering and was given the statutory, indeterminate sentence of not less than one nor more than ten years.

On October 29, *1942*, being a date over one year later, the Warden of the West Virginia Penitentiary, in whose custody Petitioner had been placed, filed an information before the Circuit Court of Marshall County under West Virginia's habitual criminal statute (West Virginia Code, § 62–8–4 [Michie Supp.1939]), alleging three prior felony convictions against Petitioner.

On November 4, *1943*, after the lapse of still another year from the date of sentence for the substantive crime, which gave rise to the immediate recidivist proceedings, Petitioner was found to be the same person who had been convicted of having committed felonies on prior occasions as alleged in the information, and he was thereupon given a life sentence as provided by the state recidivist statute.

Petitioner seeks discharge from this life sentence by the utilization of this federal habeas corpus proceeding, introducing his basic allegation with the assertion that he has now served his principal sentence in full and that he remains confined at this time only under the life sentence imposed upon him as a recidivist.

The sole issue before this Court is whether or not the life sentence is void. Petitioner contends the filing of the information by the warden was not timely, as required by statute as it existed at that time.

In 1942, when the information was filed against the Petitioner, West Virginia Code § 62–8–4 (Michie Supp.1939), was in force and applicable, and read as follows:

> When a prisoner convicted of an offense and sentenced to confinement therefor in the penitentiary, is received therein, if he was before convicted in the United States of a crime punishable by imprisonment in a peni-

tentiary and the record of his conviction does not show that he has been sentenced under sections eighteen or nineteen, article eleven, chapter sixty-one (§§ 6130, 6131) of this code, the warden of the penitentiary *shall* give information thereof, *without delay,* to the circuit court of the County of Marshall, * * * (emphasis supplied).

■ West Virginia Code § 62–8–4 (Michie 1966), in its present form, was amended in 1951. The effect of that amendment is of prime significance. It substituted in the first sentence " * * * *may* give information thereof, * * * *"* for "*shall* give information thereof, *without delay,* * * *."* At the time Petitioner was brought before the Circuit Court of Marshall County on the information filed by the warden, the imperative "shall" was employed, along with the restrictive words "without delay." "Shall" would apparently connote a mandatory duty; "may" is inherently more permissive in character. See generally 82 C.J.S. Statutes § 380 (1953). A full discussion as to the distinctions between mandatory and directory or permissive statutory provisions is contained in 82 C.J.S. Statutes § 376 (1953), quoted in State ex rel. Kennedy v. Boles, 150 W.Va. 504, 511, 147 S.E.2d 391, 396 (1966):

> Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form, and what is a matter of essence can often be determined only by judicial construction. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from

ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results.

■■ The legislative intent must be determined from a consideration of all the surrounding circumstances. "Consideration must be given to the entire statute, its nature, its object, and the consequences which would result from construing it one way or the other, and the statute must be construed in connection with other related statutes." 82 C.J.S. Statutes § 376 (1953).

The legislative intent in changing the wording of the statute in point here is not clear. Committee reports of legislative action on the statute under consideration are apparently unavailable. It would be safe to conclude, nevertheless, that the warden is now granted a wider latitude of discretion within which to function in this area. Substitution of "may" for "shall * * * without delay" by legislation can certainly be said to be a relaxation of an already unclear time restriction. But how much of a change was intended is, of course, pure speculation.

■■ As pointed out by Petitioner's court appointed counsel in their brief, penal statutes are construed strictly against the state and in favor of the accused. 17 Michie's Jurisprudence, Statutes § 67 (1951). It has been repeatedly found by the West Virginia Supreme Court of Appeals that the statutory habitual criminal proceedings, being wholly statutory and in derogation of the common law, and, thus an area in which the state trial court has no inherent or common law jurisdiction or power, generally require a strict construction in favor of the prisoner. State ex rel. Ringer v. Boles, 151 W.Va. 864, 871, 157 S.E.2d 554, 558 (1967) and cases cited therein.

There is no West Virginia decision that falls directly on the issue presented here. However, comments by the courts upon various aspects of this statute give an insight to resolving the problem. In Oyler v. Boles, 368 U.S. 448, 456 n. 11, 82 S.Ct.

501, 7 L.Ed.2d 446 (1962) the United States Supreme Court noted the discretion vested in the warden as to the invocation of a severer penalty through this statute. It was further observed that failure to invoke the statutory proceedings may reflect the exercise of a discretion, thereby conveying the logical inference that there may be a point of time after which the warden may not further exercise his powers under the statute. This would suggest a realistic interpretation of the statute, and especially its present use of "may."

In the earlier case of Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912) this statute was held constitutional, withstanding attacks of depriving petitioner liberty without due process of law, of denying him the equal protection of the laws, of subjecting him to double jeopardy, of abridging his privileges and immunities as a citizen, and of inflicting upon him cruel and unusual punishment. The statute then contained the same critical words as involved in this case. The purpose of the statute was discussed and the United States Supreme Court speaking through Justice Hughes stated that where the policy of heavier punishment for repeating offenders is in force,

> [t]here is manifest propriety in guarding against the escape from this penalty of those whose previous conviction was not suitably made known to the court at the time of their trial. Otherwise, criminals who change their place of operation and successfully conceal their identity would be punished simply as first offenders, although *on entering prison they would immediately be recognized as former convicts.* It is to prevent such a frustration of its policy that provision is made for alternative methods; either by alleging the fact of prior conviction in the indictment and showing it upon the trial, or by a subsequent proceeding in which the identity of the prisoner may be ascertained and he may be sentenced to the full punishment fixed by

law. Graham v. West Virginia, supra, at 626, 32 S.Ct. at 586. (Emphasis added).

*Graham* was decided in 1912, and since then the great advancement of systems of identification and communication has modified its practical application to some degree. Today information of prior convictions is almost instantly available to most prosecutors.

■ Nevertheless, the only evident time limit expressed either legislatively or judicially is that the warden may take such action only while the prisoner is in his custody. State ex rel. Mounts v. Boles, 147 W.Va. 152, 126 S.E.2d 393 (1962). If a prisoner has served his sentence and has been released, the warden cannot initiate a recidivist proceeding against him. Therefore, it was declared that if a recidivist sentence is declared void by a court in a habeas corpus proceeding, and if that petitioner has served the maximum sentence for the substantive offense, he must be released and discharged, thereby prohibiting the warden from filing a further information under West Virginia Code § 62-8-4 (Michie 1966). State ex rel. Mounts v. Boles, *supra*, at 399 (*Dicta*). This apparently contemplates the warden bringing this information at any time, even in the distant future.

It should be noted that, as to an expressed time period limitation, if any, there is no restriction in West Virginia Code § 62-8-4 (Michie 1966) similar to that contained in West Virginia Code § 61-11-19 (Michie 1966) providing for the filing of an information by the prosecuting attorney. In the latter is contained the provision that the convicted prisoner shall be brought before the court in which he was convicted *before the expiration of the term at which such person was convicted.* Failure to comply with this requirement of § 61-11-19 has been held to void any added portion of a sentence in excess of the maximum sentence for the principal offense. State ex rel. Bonnette v. Boles, 148 W.Va. 649, 136 S.E.2d 873 (1964). The analysis is not truly complete due to the wording change accomplished by the 1951 amendment, previously discussed.

The present statute considered, it appears that one may presume that the warden must act, if he so desires, within a reasonable time after he discovers the prior offenses, or should have discovered them, upon a prudent examination. This does not strike out as an unreasonable standard. Carrying this reasoning an additional step, it would seem that a higher duty was placed upon the warden under the statute as it existed in 1942 before it was amended, compelling the warden to act without delay. It would appear that under the 1942 statutory language an affirmative duty was placed upon the warden to seek out any prior convictions and to proceed promptly in this matter, if he was in fact to do so at all; and by use of the word "shall" it should be seriously urged that it was his mandatory duty to act in all appropriate cases.

■ If the warden has information of prior convictions touching one in his custody, the duty exists that he promptly bring such before the appropriate court. If, for any reason, delay occasions the discovery of a prisoner's prior record, and if the warden demonstrates to the court valid reason for this delay, then the filing of the information would seem proper despite the lapse of considerable or even a substantial period of time. In short, each case must be examined in the context of its own set of facts. In Sheftic's case no reasons were offered for the failure to file the information for more than a year after he was placed in the warden's custody. All of Sheftic's prior convictions occurred in the State of West Virginia and involved incarceration in the West Virginia State Penitentiary. As such, it would appear that they were in the immediate knowledge of the warden of the penitentiary. It was an abuse of this Petitioner's equal protection and due process rights to delay the filing of an information for the period of time involved in this case.

Petitioner raises and suggests, in addition to the above discussed claim for federal habeas corpus relief, several interesting aspects that go to his recidivist conviction. It is neither necessary nor appropriate for this Court to discuss or pass upon these contentions, in light of the Court's determination of the fundamental ground for relief.

Accordingly an order will be entered voiding the recidivist conviction of the Petitioner of November 4, 1943, out of the Circuit Court of Marshall County, West Virginia.