GREENAWAY, JR., Circuit Judge,
dissenting, joined by CHAGARES, HARDIMAN, and VANASKIE, Circuit Judges.
Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Congress vested the Supreme Court — and only the Supreme Court — with the authority to determine clearly established law for purposes of analyzing an inmate’s federal challenge to a state court judgment. Today, the majority feigns fidelity to this enduring tenet of AEDPA jurisprudence. In the process, the majority assumes the role of legislator, rewriting AEDPA to add this Court, along with the Supreme Court, as the two judicial bodies capable of delineating clearly established law. Armed with this newly created authority, the majority wades through murky Supreme Court precedent and emerges with what it purports to be an unassailable legal principle: that the prior-conviction exception enshrined in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), forbids a sentencing court from finding facts inconsistent with a prior conviction when applying a state recidivism statute.
Unlike the majority, I cannot discern any principle in Apprendi or other authoritative Supreme Court precedent that would render this interpretation of the pri- or-conviction exception objectively unreasonable, the deferential standard by which we must judge the state court’s determination. Indeed, the majority identifies not one Supreme Court case expounding on the contours of the amorphous prior-conviction exception. This lack of clarity coupled with the inherent tension between Apprendi and Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 *419 L.Ed.2d 350 (1998) — a controlling case the majority brushes aside as having limited relevance — belies the majority’s triumphant conclusion that the state court’s determination was objectively unreasonable.
I do not disagree that the majority’s interpretation of the prior-conviction exception is a reasonable and even favorable one, preventing an otherwise seemingly inequitable result. Of course, our task is not to simply choose the preferred reading of an ambiguous legal phrase. Absent guidance from the Supreme Court, we are left to determine whether the state court’s interpretation was objectively unreasonable. Given that this area of law is, at best, in a state of flux, AEDPA “demands that [the] state-court decision[] be given the benefit of the doubt.” Renico v. Lett, — U.S.-,-, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks and citation omitted). For this reason, I am compelled to respectfully dissent.
I. AEDPA Imposes a High Threshold
While the majority outlines the basic AEDPA framework governing our inquiry, AEDPA’s prominent role in this case requires further elaboration.
As amended by AEDPA, 28 U.S.C. § 2254 provides, in pertinent part: “[A] circuit judge ... shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a). “[W]ith respect to any claim that was adjudicated on the merits in State court proceedings,” the writ shall not issue unless the adjudication of the claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States” or was “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Id. § 2254(d)(l)-(2).
A state court decision is “contrary to” Supreme Court precedent “if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,” or “if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court’s] precedent.” Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an unreasonable application of federal law “if the state court identifies the correct governing legal rule from [the Supreme] Court’s cases but unreasonably applies it to the facts of the particular state prisoner’s case.” Id. at 407, 120 S.Ct. 1495. To qualify as an “unreasonable application” of clearly established federal law, the state court’s application must be objectively unreasonable. Id. at 409, 120 S.Ct. 1495. That the state court decision was incorrect or erroneous is insufficient if the error was nonetheless objectively reasonable. Id. at 410, 120 S.Ct. 1495; see also Renico, 130 S.Ct. at 1862 (“[A]n unreasonable application of federal law is different from an incorrect application of federal law.” (quoting Williams, 529 U.S. at 410, 120 S.Ct. 1495)). “Indeed, ‘a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.’ ” Renico, 130 S.Ct. at 1862 (quoting Williams, 529 U.S. at 411, 120 S.Ct. 1495).
As a result, the “contrary” and “unreasonable application” thresholds are “highly deferential ... for evaluating state-court *420 rulings, which demand[] that state-court decisions be given the benefit of the doubt.” Cullen v. Pinholster, — U.S. -, -, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)). These standards are “ ‘difficult to meet,’ because the purpose of AEDPA is to ensure that federal habeas relief functions as a ‘guard against extreme malfunctions in the state criminal justice systems,’ and not as a means of error correction.” Greene v. Fisher, — U.S.-,-, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011) (quoting Harrington v. Richter, — U.S. -, -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)).
I agree with the majority that the focus of our inquiry is on the “unreasonable” prong because the state court identified controlling Supreme Court precedent. See Williams, 529 U.S. at 406, 120 S.Ct. 1495 (“[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner’s case would not fit comfortably within § 2254(d)(l)’s ‘contrary to’ clause.”). As such, we can grant Garrus’s petition only if the sentencing court’s application of Pennsylvania’s recidivism statute transcended the bounds of this undeniably deferential framework.
II. Majority’s Discussion of Supreme Court Precedent Falls Short
It is undeniable that the majority’s interpretation of Apprendi’s prior-conviction exception cannot stand in the absence of clearly established law. See Howes v. Fields, — U.S. -, -, 132 S.Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (rejecting a circuit court’s determination that Supreme Court precedent clearly established a categorical rule regarding custodial interrogations of inmates). Recognizing its obligation, the majority spends pages examining Supreme Court precedent. Yet nowhere in that examination does the majority grapple with precedent that undermines its position. This principled avoidance is the only means by which the majority can reach the conclusion that Supreme Court precedent clearly establishes that it would be objectively unreasonable to interpret the phrase “the fact of a prior conviction” as the state court did in this case.
I do not disagree with the majority that Apprendi is at the forefront of our inquiry. I do disagree, however, with the majority’s perception that Apprendi is the be-all and end-all of our inquiry. The majority’s singular focus is apparent at the beginning of its opinion, stating that the “[k]ey” to resolving this case involves answering “whether, pursuant to AEDPA, the state court unreasonably applied Apprendi.’ ” (Majority Op. at 396.) However, as the majority acknowledges, Garrus was sentenced under 42 Pa. Cons.Stat. § 9714, Pennsylvania’s recidivism statute. Despite this admission, Almendarez-Torres — a critical Supreme Court case examining a sentencing court’s power to engage in fact-finding when applying a recidivism statute — plays second fiddle to Apprendi in the majority’s opinion. And when the majority does address Almendarez-Torres, it sidesteps the very logic in AlmendarezTorres that casts even the slightest doubt on the notion that the majority’s interpretation of the prior-conviction exception is clearly established.
Almendarez-Torres involved a federal statute that permitted an enhanced penalty for any person unlawfully in the United States who had previously been deported after being convicted of an aggravated felony. 523 U.S. at 226, 118 S.Ct. 1219. The defendant pled guilty to being in the United States, without permission, after being deported. Id. At sentencing, the defendant *421 argued that the enhancement should not apply because his three previous convictions for aggravated felonies, which the defendant did not contest, were not charged in the current indictment. Id. at 227, 118 S.Ct. 1219. The district court rejected this argument, found the existence of the prior convictions, and applied the sentence enhancement. Id. The Fifth Circuit affirmed. Id. at 227-28, 118 S.Ct. 1219.
The Supreme Court held that the district court properly treated the defendant’s prior convictions as a sentencing factor and not a separate offense. Id. at 235, 118 S.Ct. 1219. The Court repeatedly stressed that its analysis was predicated on the unique role recidivism plays at sentencing. See id. (“At the outset, we note that the relevant statutory subject matter is recidivism. That subject matter — prior commission of a serious crime — is as typical a sentencing factor as one might imagine.”); id. (“With recidivism as the subject matter in mind....”); id. at 241, 118 S.Ct. 1219 (“[The statute at issue] involves one of the most frequently found factors that affects sentencing — recidivism.”); id. at 243, 118 S.Ct. 1219 (“[T]he sentencing factor at issue here — recidivism—is a traditional, if not the most traditional, basis for a sentencing court’s increasing an offender’s sentence.”). The Court noted that, historically, recidivism operated outside of the general framework requiring elements of an offense be submitted to a jury because “recidivism ‘does not relate to the commission of the offense, but goes to the punishment only, and therefore ... may be subsequently decided.’ ” Id. (quoting Graham v. West Virginia, 224 U.S. 616, 624, 32 S.Ct. 583, 56 L.Ed. 917 (1912)).
Two years after Almendarez-Torres, the Supreme Court rendered a decision in what we have described as its “seminal case” on sentencing — Apprendi. Reinhold v. Rozum, 604 F.3d 149, 152 (3d Cir.2010). In Apprendi, the defendant received an enhanced sentence of twelve years for weapon offenses punishable by a statutory maximum of ten years, based on a determination by the sentencing court, not the jury, that the crime was racially motivated. 530 U.S. at 470-71, 120 S.Ct. 2348. Rejecting this approach, the Court pronounced that the Sixth Amendment required that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Id. at 490, 120 S.Ct. 2348. Central to the Court’s determination was the fact that the hate crime enhancement required a finding that the defendant’s purpose was to intimidate on the basis of race — an inquiry into the defendant’s mens rea, an element of the offense. Id. at 492-93, 120 S.Ct. 2348.
The Court attempted to dispel any apparent tension between the rule announced in Apprendi and the Court’s decision in Almendarez-Torres. “Whereas recidivism ‘does not relate to the commission of the offense’ itself, New Jersey’s biased purpose inquiry goes precisely to what happened in the ‘commission of the offense.’ ” Id. at 496, 120 S.Ct. 2348 (quoting Almendarez-Torres, 523 U.S. at 230, 118 S.Ct. 1219). But the Court was cognizant that “it is arguable that Almendarez-Torres was incorrectly decided” based on a “logical application” of the Court’s analysis in Apprendi. Id. at 489, 120 S.Ct. 2348. In the end, the Court reasoned that Almendarez-Torres “represents at best an exceptional departure” from Apprendi. Id. at 487, 120 S.Ct. 2348. While the Apprendi Court provided less than unbridled support for Almendarez-Torres, it is clear that Almendarez-Torres had continuing vitality after Apprendi.
The majority devotes no attention to the integral role recidivism played in Almen *422 darez-Torres, instead trying to minimize Almendarez-Torres’s, significance entirely. Quoting Apprendi, the majority refers to Almendarez-Torres as having “limited” and “narrow” application. (Majority Op. at 401-02 (quoting Apprendi 530 U.S. at 488 n. 14, 489, 120 S.Ct. 2348).) Put in its proper light, however, this characterization in no way subverts the importance of Almendarez-Torres to Garrus’s case.
Apprendi did not involve the application of a recidivism statute. Instead, Apprendi addressed a hate crime enhancement that inquired as to the defendant’s mens rea, which the Court iterated was “as close as one might hope to come to a core criminal offense ‘element.’ ” 530 U.S. at 493, 120 S.Ct. 2348. By contrast, Almendarez-Torres expressly excluded recidivism as an exception to the nascent legal principle enshrined three years later in Apprendi. Almendarez-Torres, 523 U.S. at 244, 118 S.Ct. 1219 (“[T]o hold that the Constitution requires that recidivism be deemed an ‘element’ of petitioner’s offense would mark an abrupt departure from a longstanding tradition of treating recidivism as going to the punishment only.” (internal quotation marks and citation omitted)). As a result, it is unsurprising that Apprendi ensured that Almendarez-Torres did not apply outside the recidivism context. However, recidivism is squarely at issue in this case, belying the majority’s attempt to minimize Almendarez-Torres’s, relevance.
As much as the majority would like to forget Almendarez-Torres, there is little debate that Almendarez-Torres remains binding precedent. After Apprendi cast doubt on the continuing vitality of Almendarez-Torres, we addressed whether Almendarez-Torres’s viability had been short-lived. Because the Apprendi Court expressly declined to overrule Almendarez-Torres, we unsurprisingly applied Almendarez-Torres and held that predicate offenses under a recidivism statute need not be charged in an indictment and submitted to the jury. See United States v. Weaver, 267 F.3d 231, 250 (3d Cir.2001) (“Recently, in Apprendi[ ], the Court upheld the validity of Almendarez-Torres.... ”). We have since reaffirmed the viability of Almendarez-Torres and have not retreated from this determination. United States v. Arrelucea-Zamudio, 581 F.3d 142, 157 n. 15 (3d Cir.2009) (“Although several Supreme Court decisions have cast doubt on the statute’s continuing constitutional viability post-Apprendi ... we are bound by Almendarez-Torres ....”); United States v. Ordaz, 398 F.3d 236, 241 (3d Cir.2005) (“The holding in Almendarez-Torres remains binding law... ,”).[1] The Supreme Court continues to recognize the separate treatment afforded prior convictions in Almendarez-Torres. See United States v. O’Brien, — U.S.-,-, 130 S.Ct. 2169, 2174, 176 L.Ed.2d 979 (2010).
III. State Court’s Determination Was Objectively Reasonable
Against this proper legal backdrop, there can be no doubt that, for purposes of *423 sentencing under Pennsylvania’s recidivism statute, the state court’s determination that Garrus’s second-degree burglary conviction could be treated as a first-degree offense was not objectively unreasonable. Almendarez-Torres established that a sentencing court applying a recidivism statute that carries with it a sentence above the statutory maximum is permitted to engage in judicial factfinding regarding the defendant’s prior convictions. In Apprendi, the Court clarified that such judicial factfinding was impermissible, except that relating to “the fact of a prior conviction.” 530 U.S. at 490, 120 S.Ct. 2348. In other words, the exact undefined judicial factfinding permitted by Almendarez-Torres.
Apprendi provides no guidance regarding the scope or meaning of the prior-conviction exception. For good reason, Apprendi’s true import is not the establishment of the exception to the rule but the rule itself — that a judge cannot find facts regarding an element of the offense where the defendant faces a sentence above the statutory maximum. Apprendi did not need to expound on the scope of the prior-conviction exception because Apprendi was not, contrary to AlmendarezTorres, a recidivism case. The prior-conviction exception remains as amorphous and undefined as the day Apprendi was decided. See Kessee v. Mendoza-Powers, 574 F.3d 675, 676 (9th Cir.2009) (“What is the scope of the ‘prior conviction’ exception to the general rule that a sentencing judge may not make factual findings that increase the statutory maximum criminal penalty? The Supreme Court has not yet answered that question.”).
I do not deny that the majority’s reading of the prior-conviction exception — prohibiting a sentencing court from applying a recidivism statute and finding a fact inconsistent with a prior conviction — is a reasonable interpretation.[2] Under AEDPA, that the majority’s reading was reasonable does not ipso facto render all other readings patently unreasonable. See id. (noting that, under AEDPA, just because an appellate court’s own interpretation of the prior-conviction exception is reasonable does not mean that the state court’s reading was unreasonable). “Because AEDPA authorizes federal courts to grant relief only when state courts act unreasonably, it follows that ‘the more general the rule’ at issue — and thus the greater the potential for .reasoned disagreement among fair-minded judges — ‘the more leeway state courts have in reaching outcomes in case-by-case determinations.’ ” Renico, 130 S.Ct. at 1864 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). In my view, the pri- or-conviction exception is sufficiently general and undefined, such that we must, under AEDPA, defer to the state court. Given the logic of Almendarez-Torres and the fact that the Supreme Court has yet to clarify the scope of the prior-conviction exception, I simply cannot, subscribe to the majority’s finding that the state court’s decision here was objectively unreasonable.
A few additional points bear mentioning. First, the majority opinion suffers from an *424 internal inconsistency. Relying as it does on Apprendi, a case founded on the Sixth Amendment right to a jury trial, one would expect the majority to require that a jury determine whether or not Garrus’s prior conviction for burglary qualifies as a crime of violence. Yet the majority does the opposite, requiring that the judge determine that Garrus’s prior conviction was necessarily not a crime of violence.
Second, the majority notes that “[n]o existing precedent so much as hints that [the state court’s] paradoxical interpretation of Apprendi might be reasonable.” (Majority Op. at 403-04.) This point suffers from two flaws. One could easily reverse the logic of this statement and assert that no Supreme Court precedent suggests that the majority’s interpretation is the only reasonable interpretation. Under AEDPA, that is sufficient to uphold the state court’s determination.
More importantly, the proposition is simply inaccurate. The majority makes clear that it is troubled by the fact that Garrus pled guilty to second degree burglary only to have a judge find facts years later inconsistent with that prior conviction and without affording Garrus procedural safeguards. In United States v. Santiago, 268 F.3d 151 (2d Cir.2001), then-judge Sotomayor, writing for the court, addressed whether the requirement under the federal recidivism statute, the Armed Career Criminal Act, that the defendant have three predicate convictions “committed on occasions different from one another,” is a factual issue that must be submitted to a jury under Apprendi. Id. at 152. In resolving the issue in the negative, Judge Sotomayor stressed that courts make determinations all the time in the context of recidivism for which the Apprendi procedural safeguards do not attach. See id. at 156 (“The determination of ‘the fact of a prior conviction’ implicitly entails many subsidiary findings, not the least of which is that the defendant being sentenced is the same defendant who previously was convicted of those prior offenses, a fact that could be quite controversial indeed. Determination of this question would not necessarily come with the ‘procedural safeguards’ noted in Apprendi.”). Judge Sotomayor went on to conclude:
In short, we read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the ‘who, what, when, and where’ of a prior conviction.
Id. Santiago refutes the majority’s unyielding interpretation of the phrase “the fact of a prior conviction,” which is even more meaningful considering that Santiago was not a case decided under the highly deferential AEDPA framework.
Finally, there is little doubt that Almendarez-Torres’s continuing vitality is in jeopardy. See Shepard v. United States, 544 U.S. 13, 27-28, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring) (“Almendarez-Toms ... has been eroded by this Court’s subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided.... [I]n an appropriate case, this Court should consider Almendarez-Torres ’ continuing viability.”). However, we must apply Almendarez-Toms until the Supreme Court holds otherwise. See Hohn v. United States, 524 U.S. 236, 252-53, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (“Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised *425 doubts about their continuing vitality.”); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.”).
For these reasons, I respectfully dissent.

. Every other circuit court to have considered the issue has agreed that Almendarez-Torres remains good law. See United States v. Gonzalez, 682 F.3d 201, 204 (2d Cir.2012); United States v. Cortes-Salazar, 682 F.3d 953, 958 n. 2 (11th Cir.2012); United States v. Farrell, 672 F.3d 27, 37 n. 12 (1st Cir.2012); United States v. Nigg, 667 F.3d 929, 935-36 (7th Cir.2012); United States v. Ruiz-Apolonio, 657 F.3d 907, 921 (9th Cir.2011); United States v. McMurray, 653 F.3d 367, 371 (6th Cir.2011); United States v. Beckstrom, 647 F.3d 1012, 1020 (10th Cir.2011); United States v. Smith, 640 F.3d 358, 369 (D.C.Cir. 2011); United States v. Olalde-Hernandez, 630 F.3d 372, 377 (5th Cir.2011); United States v. Mason, 628 F.3d 123, 134 (4th Cir.2010); United States v. Alston, 626 F.3d 397, 406 (8th Cir.2010).

. I concede that the state court's decision in this case produced a seemingly inequitable result. We have recognized that a guilty plea binds a defendant "to the accuracy of the facts set forth in the indictment.” United States v. Parker, 874 F.2d 174, 177 n. 1 (3d Cir.1989). The state court’s determination would appear to run counter to this principle because Garrus was not held to the facts he pled to as part of the judicial process related to his 1997 burglary conviction. However, Almendarez-Torres simply treats recidivism differently. While there is no doubt that the majority's moral compass is well-aligned, morality cannot trump our duty to faithfully apply Supreme Court precedent.