WILLIAM S. CROSS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion filed December 12, 1928.

.770

*Florence Hazard Mims,* of Tampa, for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant for the State.

STRUM, J.—On October 20, 1927, plaintiff in error, who will hereafter be referred to as the defendant, was convicted in the criminal court of record for Hillsborough county of the larceny of an automobile of the value of about $1,000.00, which offense is a felony. Sec. 5142, Rev. Gen. Stats., 1920. The information upon which this conviction was had was filed on August 9, 1927, and will hereafter be referred to as the first information. On Octo-

ber 21, 1927, the county solicitor of Hillsborough county filed a further information accusing defendant of having been previously convicted of five felonies in other states, in addition to his conviction in this State on October 20, 1927. This information, which will be hereafter referred to as the second information, was filed pursuant to Chap. 12022, Acts of 1927, which took effect on June 3, 1927.

To the second information, the defendant in open court, after being duly cautioned as to his rights, pleaded guilty, thereby confessing his identity as a person convicted of five previous felonies, as well as the felony of which he was convicted in this State on October 20, 1927. The sufficiency of the second information was not questioned, either by motion to quash, motion in arrest of judgment, or otherwise.

Pursuant to the provisions of Chap. 12022, *supra,* the trial judge, for the felony committed in this State, of which defendant was convicted on October 20, 1927, under the first information, sentenced defendant to imprisonment for the term of his natural life, to which judgment writ of error is taken.

Amongst the provisions of Chap. 12022, *supra,* are the following:

"Sec. 2. Punishment for fourth conviction of felony: A person who after having been three times convicted within this State of felonies or attempts to commit felonies, or under the law of any other State, government or country of crimes which, if committed within this State would be felonious, commits a felony within this State shall be sentenced upon conviction of such fourth or subsequent offense to imprisonment in a State prison for the term of his natural life. A person to be punishable under this and the preceding section need not have been indicted and convicted as a

previous offender in order to receive the increased punishment therein provided, but may be proceeded against as provided in the following section:

"Sec. 3. If at any time either after sentence or conviction it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth either in Sec. 1 or Sec. 2 it shall be the duty of the prosecuting attorney of the county in which such conviction was had to file an information accusing the said person of such previous convictions, whereupon the court, in which such conviction was had, shall cause the said person whether confined in prison or otherwise to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof, according to. law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person or refuses to answer or remains silent, his plea, or the fact of his silence, shall be entered of record and a jury shall be empanelled to inquire whether the offender is the same person mentioned in the several records as set forth in such information. If the jury finds that he is the same person or if he acknowledges or confesses in open court after being duly cautioned as to his rights that he is the same person the Court shall sentence him to the punishment prescribed in said Sec. 1 and Sec. 2, as the case may be, and shall vacate the previous sentence, deducting from the new sentence all time actually served on the sentence so vacated. * * *''

During the trial upon the *first* information the defendant voluntarily took the stand as a witness in his own behalf. Error is assigned upon certain rulings of the trial judge upon questions propounded by the prosecuting attorney on

cross-examination of the defendant during the trial. So that there may be no misunderstanding as to the character of the questions and answers under consideration, we here produce verbatim, as shown by the record, that portion of the cross-examination under attack:

"Q. Have you ever been convicted of any crime? Mrs. Mims: I object. That has nothing to do with this issue.

"The Court: The objection is overruled. Mrs. Mims: Exception noted.

"Q. How many different times have you been convicted? Miss Krivitsky: We object.

"The Court: The objection is overruled. Miss Krivitsky: Exception noted. Witness: Three.

"Q. Where were you convicted and when? Miss Krivitsky: Your Honor, it makes no difference. He can only ask whether he was convicted or not, and, after he answers in the affirmative, the State has no right to ask any further question.

"The Court: The objection is sustained.

"Q. Isn't it a fact you have been convicted four times? Miss Krivitsky: Your Honor, he has answered three times and it makes no difference after he has answered in the affirmative.

"The Court: The objection is sustained. Mrs. Mims: Your Honor, these other convictions are immaterial, and what he did in New York has nothing to do with this case. Witness: Yes, sir.

"Q. Isn't it a fact you have been convicted five times? A. I do not think so; no, sir.

"Q. To refresh your recollection, weren't you convicted in Trenton, New Jersey, in 1920 for forgery? Miss Krivitsky: Your Honor, we object, on the ground that after a defendant has said that he has been con-

victed four times, now the record can not be brought up that he has confessed a fact, and after admitting it he can not bring in the record.

"The Court: He may refresh his recollection. Miss Krivitsky: Exceptions noted.

"Q. Is that correct? A. Yes, sir.

"Q. And at the same place, Trenton, New Jersey, about 1920, weren't you convicted of breaking and entering? Miss Krivitsky: After he has said that he has been convicted, he cannot go into that.

"The Court: I have ruled on that objection several times. Miss Krivitsky: Exception noted.

"Q. Is that correct? A. Yes, sir.

"Q. Now, about 1922, weren't you convicted in Cleveland, Ohio, for forgery? A. Yes, sir.

"Q. That is three times, isn't it? A. Yes, sir.

"Q. Again, in Trenton, New Jersey, weren't you convicted there on a check charge? A. I think so; yes, sir.

"Q. That is four times, isn't it? A. Yes, sir.

"Q. Again, in Trenton, New Jersey, weren't you arrested there for highway robbery and convicted? A. Yes, sir; it was not highway robbery.

"Q. Well, complicity in highway robbery? A. Yes, sir.

"Q. Then you have been convicted five times instead of four. A. Yes, sir."

The previous convictions with which defendant was accused in the second information are the same convictions mentioned in that portion of the cross-examination just above set out.

It is contended here that the effect of the rulings of the trial judge was to compel defendant to be a witness against himself in a criminal case, contrary to Sec. 12 of the Dec-

laration of Rights of the Florida constitution, the theory of the defendant being that through the cross-examination aforesaid he was unlawfully compelled to disclose the information upon which the county solicitor filed the second information.

The rulings complained of occurred during the cross-examination of defendant upon the trial of his guilt or innocense of the offense charged in the *first* information, to which he had pleaded not guilty, in which trial he had voluntarily offered himself as a witness in his own behalf. The second information had not yet been filed. The testimony admitted over the objection of defendant was admissible in the trial of the first information as affecting the credibility of the accused as a witness. Sec. 6080, Rev. Gen. Stats., 1920, provides that in all criminal prosecutions the accused may at his option be sworn as a witness in his own behalf and shall in such case be subject to examination as other witnesses. Sec. 2706, Rev. Gen. Stats., 1920, provides that no person shall be disqualified to testify as a witness by reason of conviction of any crime except perjury, but evidence of conviction of such other crimes may be given to affect the credibility of such witness, and such conviction may be proved by questioning the proposed witness, or if he deny it, by producing a record of his conviction. See the discussion of the latter statute in Roe v. State, decided at this term.

This Court has held in numerous cases that where an accused while on trial voluntarily offers himself as a witness on his own behalf, he thereby voluntarily subjects himself to any legitimate cross-examination, whether such cross-examination tends to incriminate him or not, and the State has the right on cross-examination to interrogate him as to whether he has been previously convicted of a criminal offense. Herndon v. State, 72 Fla. 108, 72 So. R. 833; Squires v. State, 42 Fla. 251, 27 So. R. 864; Daly v. State,

67 Fla. 1, 64 So. R. 358; Hoskins v. State, 70 Fla. 186, 69 So. R. 701. Of course, there are limits beyond which this character of cross-examination cannot be pursued. For instance, where the accused admits the fact of a former conviction, this character of cross-examination cannot be further pressed upon the accused merely for the purpose of showing that the accused having been convicted of other crimes of like character, would be likely to commit ·the crime with which he is charged. Martin v. State, 86 Fla. 616, 98 So. R. 827. And it may be—though it is not necessary for us to now consider the point—that it would be improper for the prosecutor, under the guise of cross-examination, to embark upon a "fishing expedition" merely for the purpose of gathering from the accused information upon which to base a subsequent information accusing him as a habitual offender for the purpose of increasing his punishment. Neither these nor any other limitations, however, have been transcended in this case. Under the rulings of the trial court, the cross-examination in question was confined strictly to the fact of whether or not the plaintiff in error had ever been previously convicted of any crime, permitting no digression by the prosecutor into the realm of speculation or experiment. It was only when the accused denied having been previously convicted as many as five times that the county solicitor, for the permissible purpose of refreshing the witness' memory, was permitted to specifically interrogate him with respect to five previous convictions, as to which ·the prosecutor in his questions necessarily stated the nature of the offenses and the place of conviction therefor, each of which convictions the defendant then admitted. We see nothing in the cross-examination in question that was not permissible in the trial during which it occurred for the purpose of assailing the credibility of the accused as a witness in his own behalf.

There was no attempt to use the testimony in question to sustain the second information. To that information defendant pleaded guilty, thereby admitting his identity as the person convicted of the previous offenses specified in the second information as well as the last offense, rendering proof thereof unnecessary. Of course, if the accused pleads not guilty to an information accusing him as an habitual offender, or stands mute, it would then be incumbent upon the State to prove the allegations of such information, just as any other original information. See Gordon v. State, 86 Fla. 255, 97 So. R. 428.

It is apparent that the answers of the defendant on his cross-examination were not the source of the prosecutor's knowledge upon which he filed the second information. When the defendant denied that he had been previously convicted five times the prosecutor thereupon proceeded to delineate and describe five previous convictions, none of which had theretofore been described by the defendant in his testimony. His only reference thereto had been that he had been four times previously convicted of crime, having mentioned neither the time, nor the place, nor the character of the crime, all of which the prosecutor immediately thereafter mentioned.

As the questions complained of were proper subjects of cross-examination on the trial of the issues under the first information, and as the record discloses that in filing the second information the prosecutor possessed knowledge of the previous convictions independent of that disclosed by defendant, and as defendant pleaded guilty to the second information, we see no violation of the defendant's immunities under Sec. 12 of the Declaration of Rights, constitution of Florida.

Defendant also questions the sufficiency of the evidence to support the verdict of guilty under the first information. There is no direct proof of the actual taking of the

automobile by the defendant, other than that afforded by his own confession. That the automobile was feloniously taken from its owner is established by undisputed evidence. The owner notified the police department of the theft. The next day, acting upon information received over the telephone from some person who declined to identify herself, two members of the police department proceeded to an address given them over the telephone and there found the automobile. The automobile was not then in the physical possession of this defendant. Further acting upon the information from the source named, the police officers proceeded to another address several blocks from where the automobile was found, and there arrested this defendant and also his co-defendant who was jointly informed against in the first indictment, but who was acquitted. These two police officers testified that they questioned the two defendants immediately after arresting them, and that this defendant, Cross, confessed to them that it was he who took the automobile in question, and that he stored it where it was found. Further, that he and his co-defendant removed the Florida license plates, substituting New York license plates which were found on the car by the police officers, and that he, Cross, and his co-defendant contemplated repainting the car so as to ''get away with it.'' The confession appears to have been made in full accord with the rule relating to the admissibility of confessions. No objection to the admissibility thereof was made, but when this defendant voluntarily took the stand in his own behalf, he denied having made the confession, testifying also that he did not take the automobile in question, and had never seen it. The jury, nevertheless, found the defendant guilty, thereby demonstrating that the defendant's testimony given at the trial was not believed by them, and that the same was not sufficiently credible to raise in the minds of the jury a reasonable doubt of the defendant's guilt.

Larceny may be proven by circumstantial evidence of such a nature and probative force that the jury could legally infer guilt therefrom beyond a reasonable doubt. Bargesser v. State, 116 So. R. 11; McDonald v. State, 56 Fla. 74, 47 So. R. 485. It was the jury's province to determine the truth of the facts testified to, and the credibility of the witnesses. Taking the evidence as a whole, it does not appear to us that the evidence was insufficient to sustain the verdict of guilty under the first information. Bargesser v. State, *supra;* People v. Graves, 162 N. E. R. 839. A verdict of guilty will not be set aside by an appellate court where there is sufficient evidence to sustain it and the attack upon the propriety of the verdict rests, not upon a lack of evidence, but upon the credibility of conflicting evidence. McDonald v. State, 56 Fla. 74, 47 So. R. 485.

The defendant also contends in this Court that the *corpus delicti* was not sufficiently established by evidence other than the confession of the defendant so as to render such confession admissible. Although no objection was made to the admissibility of the confession, in view of the gravity of the sentence in this case, we have carefully examined the evidence in that respect, but discover no deficiency.

In larceny the *corpus delicti* consists of two elements: (a) That the property was lost by the owner; and (b) that it was lost by a felonious taking, and "while it cannot be established by the confession of the defendant alone, it is the rule that such confessions or admissions may be considered in connection with the other evidence to establish it." Groover v. State, 82 Fla. 427, 90 So. R. 473. It is not essential that the *corpus delicti*, in larceny, should be established by evidence independent of that which tends to connect the accused with the commission of the offense. The same evidence which tends to prove one may also tend

to prove the other, so that the existence of the crime and the guilt of the defendant may stand together and inseparable on one foundation of circumstantial evidence. An extra-judicial confession or admission by the accused may be onsidered in connection with the other evidence, to establish the *corpus delicti*, although, as stated, the *corpus delicti* cannot rest upon the confession or admission alone. 17 R. C. L., p. 64; Groover v. State, *supra;* Sanders v. State, 28 L. R. A. (N. S.) 536. As a prerequisite to the introduction in evidence of a confession of the accused, the *corpus delicti* need be established only *prima facie,* though its establishment beyond a reasonable doubt is necessary to support a conviction. Nickels v. State, 106 So. R. 479; Parrish v. State, 105 So. R. 150; Lee v. State, 117 So. R. 699.

The defendant also assails Chap. 12022, *supra*, as being contrary to constitutional limitations, State and Federal.

Statutes of the character of Chap. 12022, *supra,* are not a modern innovation in the law. We find the primary elements of that statute embodied in statutes in other states as early as 1796. In this State enhanced penalties for the second conviction of larceny have long existed (See Secs. 5132, 5134, 5137 and 5440, Rev. Gen. Stats., 1920), as well as for second and subsequent convictions under the laws prohibiting the manufacture, possession and sale of intoxicating liquors (See Sec. 5486, Rev. Gen. Stats., 1920). Many able courts have considered statutes of this nature and have uniformly sustained their validity.

All questions here raised by the defendant against the constitutional validity of Chap. 12022, *supra,* have been settled adversely to his contentions, insofar as the Federal constitution is concerned, by Graham v. West Virginia, 224, U. S. 616; 56 L. Ed. 917; McDonald v. Massachusetts, 180 U. S. 311, 45 L. Ed. 543; and Moore v. Missouri, 159 U. S. 673, 40 L. Ed. 301, and as to State constitutions by the de-

cisions of numerous state courts. The reasoning support-
ing these decisions is equally applicable to like provisions
found in the constitution of Florida. See the very com-
plete note to State v. LePitre, 18 Ann. Cas. 924; and *in re*
Miller, 34 L. R. A. 394; 64 Am. St. R. 378; note to Comm.
v. McDermott (73 Atl. R. 427), 24 L. R. A. (N. S.) 431;
Bishop Crim. Law (9th ed.), Sec. 947 (7), 993a; Jones
v. State, 133 Pac. R. 249, 48 L. R. A. (N. S.) 204; 8 R.
C. L. 271; 16 C. J. 1339.

Chap. 12022, *supra,* does not violate constitutional pro-
visions prohibiting the passage of *ex post facto* laws. The
statute is in no sense retroactive. It is prospective in its
operation. It imposes enhanced punishment for none but
future crimes committed after its enactment. It deals with
offenders only for offenses committed after its passage, but
provides that in fixing the punishment for the later of-
fense, the condition into which the offender has brought
himself by his previous conduct shall be taken into con-
sideration. In punishing offenders for a criminal habit,
the existence of which cannot be established without show-
ing their former convictions, as well as the conviction for
which the enhanced punishment is imposed, the increased
severity of the punishment for the second or subsequent of-
fense is not a punishment of the person a second time for
his former offenses, but is a more severe punishment for
the last offense, the commission of which is a manifestation
of a criminal habit which may be taken into account in de-
termining the adequacy of punishment to be imposed upon
habitual offenders for offenses committed subsequent to the
enactment of the statute. But for the commission of the
subsequent offense, the enhanced penalty would not be im-
posed. Comm. v. Graves, 29 N. E. R. 256, 16 L. R. A. 256;
Blackburn v. State, 36 N. E. R. 18. The statute is not
rendered *ex post facto* by providing enhanced punishments
for a subsequent offense because of convictions occurring

prior to the passage of the statute. Ex parte Allen, 110 N. E. R. 535. In 1 Bishop's Crim. Law, Sec. 283 (9th ed.), .that author says: "A statute which provides a heavier punishment for a second offense than for the first is not *ex post facto,* even though the first took place before its passage. It has been repeatedly adjudged 'that the previous commission of crimes may be considered in determining the punishment to be imposed, and in the creation of certain kinds of statutory offenses, without rendering a statute an *ex post facto* law.' When both offenses, however, were committed before, the consequence is otherwise." The point is ably summarized by the Supreme Court of Virginia in Rand v. Comm., 9 Gratt. (Va.) 738, wherein that Court said: "The constitution withholds from the Legislature the power to convert, by statute, into a crime, an act which, at the time it was done, offended against no law; or to visit a criminal act, even with penalties more severe than those which were attached to it by the law when it was committed. No constitutional or other obstacle, however, seems to stand in the way of the Legislature's passing an Act declaring that persons thereafter convicted of certain offenses committed after the passage of the Act may, if shown to have committed like offenses before, be subjected to greater punishment than that prescribed for those whose previous course in life does not indicate so great a degree of moral depravity." See also McDonald v. Massachusetts, 180 U. S. 311, 45 L. Ed. 542; *idem* 53 N. E. R. 874; State v. Dowden, 115 N. W. R. 211; State v. LePitre, 103 Pac. R. 27; *Ex parte* Guiterrez, 45 Calif. 429; *in re* Miller, 68 N. W. R. 990; 64 Am. St. R. 376, 34 L. R. A. 398; Jones v. State, 133 Pac. R. 249, 48 L. R. A. (N. S.) 204; Comm. v. Ellis, 93 N. E. R. 823. On the same subject, Judge Cooley says: "And a law is not objectional as *ex post facto* which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into the ac-

count, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offence than for the first; and it has not been deemed objectionable that, in providing for such heavier penalties, the prior conviction authorized to be taken into the account may have taken place before the law was passed. In such case, it is the second or subsequent offence that is punished, not the first; and the statute would be void if the offence to be actually punished under it had been committed before it had taken effect, even though it was after its passage.'' Cooley's Const. Lim. (7th Ed.) 382. Of course, the statute contemplates valid former convictions. See Graham v. West Virginia, *supra*, and the note appended to Carlesi v. New York (233 U. S. 51), 58 L. Ed. 842. State v. Rowan, 146 Pac. R. 347. No question as to the validity of the former convictions is here presented. The defendant is in no way sought to contest that question, but pleaded guilty, which was admissible under the statute.

Nor does Chap. 12022, *supra*, violate the provisions of Sec. 12, Declaration of Rights, Constitution of Florida, that no person shall twice be put in jeopardy for the same offense. As was said by Mr. Justice Gray in McDonald v. Massachusetts, *supra*, and again approved by the Supreme Court of the United States in Graham v. West Virginia, *supra*: ''The fundamental mistake of defendant in error is his assumption that the judgment below imposes additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire. But it does no such thing * * *. The punishment is for the new crime only, but is the heavier if he is an habitual criminal * * *. The allegation of habitual and previous convictions is not a distinct charge charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only.'' Comm. v.

McDermott, 73 Atl. R. 427, 24 L. R. A. (N.S.) 431. And as the same point was stated by Mr. Justice Hughes in Graham v. West Virginia, *supra*: "The propriety of inflicting severer punishment upon old offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted." As was said in People v. Stanley, 47 Calif. 113: "The punishment for the second (offense) is increased, because by his persistence in the perpetration of crime he (the defendant) has evinced a depravity which merits a greater punishment, and needs to be restrained by severer penalties than it it were his first offense." And as was said by Chief Justice Parker in Ross' Case, 2 Pick. (Mass.) 165: "The punishment is for the last offense committed and is rendered more severe in consequence of the situation into which the party had previously brought himself." The statute does not make it an offense or crime for one to have been convicted more than once. The law simply prescribes a longer sentence for a second or subsequent offense for the reason that the prior convictions taken in connection with the subsequent offense demonstrates the incorrigible and dangerous character of accused thereby establishing the necessity for enchanced restraint. Bishop Crim. Law (9th. Ed.) Sec. 993a. The imposition of such enchanced punishment is not a prosecution of or punishment for the former convictions. The constitution forbids such action. The enchanced punishment is an incident to the last offense alone. But for that offense it would not be imposed. To quote from the Supreme Court of Appeals of West Virginia: "It (the information charging the former convictions) alleges that he has been held to answer for crime, and that he stands convicted of it * * *. It points him

out as a convict already held, upon who rests the general sentence of the law of life imprisonment. The proceedings under the statute are for identification only. They are clearly not for the establishment of guilt. The question of guilt is not reopened.'' State v. Graham, 69 So. E. R. 1010; 40 L. R. A. (N. S.) 924. See also Graham v. West Virginia, 224 U. S. 616, 56 L. Ed. 917; Moore v. Missouri, 159 U. S. 673, 40 L. Ed. 301; Sturtevant v. Comm., 33 N. E. R. 648; McDonald v. Massachusetts, *supra; idem* 53 N. E. R. 874; State v. LePitre, 103 Pac. R. 27, 18 Am. & Eng. Ann. Cas. 922; State v. Dowden, 115 N. W. R. 211; State v. Findling, 144 N. W. R. 142, 49 L. R. A. (N. S.) 449; Ingalls v. State, 4 N. W. R. 785; 8 R. C. L. 271; 16 C. J. 1339; McIntyre v. Com., 156 So. W. R. 1058.

Nor is the punishment prescribed by the statute a cruel or unusual punishment in the sense prohibited by the constitution.

As was said by Mr. Justice Chadwick in the consideration of a similar statute in State v. LePitre, 103 Pac. R. 27 : ''The spirit of the law is in keeping with the acknowledged power of the Legislature to provide a minimum and maximum term within which the trial court may exercise its discretion in fixing sentence, taking into consideration, as it should always, the character of the person as well as the probability of reformation, or the Legislature may take away all discretion and fix a penalty absolute, as it does in many instances. * * * Aside from the offender and his victim, there is always another party concerned in every crime committed, — The State, — and it does no violence to any constitutional guaranty for the State to rid itself of depravity when its efforts to reform have failed.'' More and more we are coming to the notion that punishment for habitual offenders should be made to fit the criminal as well as the crime. In prescribing punishment for such of-

fenders it is both competent and just to take into consideration not only the nature of the crime for which the punishment is to be imposed, but also the incorrigibility and depravity of the accused as demonstrated by previous convictions. Even greater importance was ascribed to the latter factor by Mr. Justice Demmer in State v. Dowden, 115 No. W. R. 211, where the following pertinent observation was made upon a statute similar to ours: "Surely when one by his conduct has indicated that he is a recidivist there is no reason for saying that society may not protect itself from his future ravages. It is neither cruel nor unusual to say that an habitual criminal shall receive a punishment based upon his established proclivities to commit crime." See also McDonald v. Massachusets, *supra;* Moore v. Missouri, *supra,* affirming State v. Moore, 26, So. R. 345; State v. Hodgson, 28 Atl. R. 1089; People v. Stanley, 47 Calif. 113, 17 Am. St. R. 401; McDonald v. Comm., 53 N. E. R. 874; In re: Miller (Mich.), 34 L. R. A. 398, 64 Am. St. R. 378; Graham v. West Virginia, *supra,* affirming State v. Graham, 69 So. E. R. 1010; Peo. v. Elliott (112 N. E.) 300, Ann. Cas. 1918 B, 391, 396.

The statute does not deprive the defendant of a jury trial for it expressly provides for a jury trial upon the question of the identity of the accused as being the same person formerly convicted of previous felonies unless he acknowledges or confesses in open court after being duly cautioned as to his rights that he is the same person.

Nor is the defendant denied the equal protection of the law by Chap. 12022, *supra.* As was said by Mr. Chief Justice Fuller in Moore v. Missouri, *supra:* "The Fourteenth Amendment means 'that no person or persons shall be denied the same protection of the laws which is enjoyed by other persons or classes in the same place and under like circumstances.' Bowman v. Lewis, (Missouri v. Lewis),

101 U. S. 22, 25 L. Ed. 989. The general doctrine is that that amendment, in respect to the administration of criminal justice requires that no different degree or higher punishment shall be imposed on one than is imposed on all for like offenses; but it was not designed to interfere with the power of the State to protect the lives, liberty, or property of its citizens, nor with the exercise of that power in the adjudication of the Courts of the State in administering the process provided by the law of the State. In re: Converse, 137 U. S. 624; 34 L. Ed. 796. And the State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offenses than for a first offense against the law, and that a different punishment for the same offense may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated." The same court, speaking through Mr. Justice Hughes in Graham v. West Virginia, *supra,* said of the West Virginia Statute: "The statute in question applies to all those 'convicted of an offense, and sentenced to confinement therefor in the penitentiary' who previously have been sentenced to a like punishment. The fact of such sentence, indicating the gravity of the offense, affords a reasonable basis for classification. * * * The 14th Amendment is not to be construed 'as introducing a factitious equality without regard to practical differences that are best met by corresponding differences of treatment.' Standard Oil Co., v. Tennessee, 217 U. S. 413, 420; 54 Ld. Ed. 817; 30 Sup. Ct. R. 543. A State may make different arrangements for trials under different circumstances of even the same class of offenses (citing numerous cases), and certainly it may suitably adapt to the exigency the method of determining whether a person found guilty of crime has previously been convicted of other offenses. All who were in like case with the

plaintiff in error were subject to the same procedure.'' See also State v. Adams, 132 Pac. R. 171; Jones v. State, 133 Pac. 254, 48 L. R. A. (N. S.) 204.

Nor is the defendant denied due process of law by the proceeding under the second information. While it is familiar practice to set forth in the indictment or information, upon which the accused is tried for an offense, the fact of prior conviction of another offense, and to submit to the same jury the evidence upon the question of guilt as to the last offense, together with that relating to the prior conviction, nevertheless the latter question is a distinct issue, and it may appropriately be made the subject of separate determination. Full opportunity to be heard in refutation of the allegation of former conviction is accorded to the defendant by the statute. Graham v. West Virginia, *supra;* People v. Coleman, 79 Pac. R. 283; People v. Sickles, 51 N. E. R. 288; People v. Rosen, 101 N. E. R. 855; Carlesi v. New York, 233 U. S. 51; 58 L. Ed. 843. The fact that the statute makes provision for a seperate and subsequent determination of the identity of the accused as the same person previously convicted of former offenses is not a denial of any constitutional right. The object in providing a method by which the fact of former convictions may be determined subsequent to the trial of the offender for his last offense is doubtless to make sure that old offenders shall not escape the enhanced punishment because their former convictions are not known when they were last tried. There is manifest propriety in guarding against the escape from the enhanced penalty of those whose previous convictions are not known, or are not suitably made known to the court, at the time of their trial for their last offense. Otherwise, criminals who frequently change their place of operation and successfully conceal their identity at the time of their last trial would be punished simply as first offenders, and

if no supplemental method was provided for determining the fact of former conviction they would escape the enhanced punishment, though subsequently recognized as old offenders. The Legislature may properly provide for a determination as to former convictions in the same trial in which the issue of guilt or innocence of the last offense charged is determined, and thereupon impose an appropriate enhanced penalty upon finding of guilt. There is, however, no constitutional mandate limiting the Legislature to that practice, even where former conviction is known at the time of defendant's trial for his last offense. That practice may be convenient, but it is not obligatory, and it is competent for the Legislature, for the purpose of imposing upon habitual offenders an enhanced penalty, to provide for a determination of the fact of former conviction upon an ancillary or subsequent proceeding of the character prescribed by Chap. 12022, *supra*. Graham v. West Virginia, 224 U. S. 616, 56 L. Ed. 917.

It is no fundamental objection to the validity of the statute in question that it authorizes previous convictions of the defendant in other states or countries to be taken into account for the purpose of imposing enhanced punishment for the offense for which he is last convicted in this State. In fixing a penalty, and in classifying offenders for that purpose, regard may be had to previous conduct without limiting it to the jurisdiction in which the last offense is committed. For the purpose of punishing the accused as an habitual criminal, it is within the discretion of the Legislature to treat former convictions in another State or country as having like effect as convictions for similar offenses in this State. To do so, is not a punishment for a crime committed in another State. It is a classification for the purpose of punishing crime committed in this State according to the criminal depravity of the accused as demon-

strated by prior convictions, for the purpose of which classi-
fication those convictions occuring in other States or coun-
tries may be taken into consideration, as well as those occur-
ing in this State. McDonald v. Massachusetts, 180 U. S.
311; 45 L. Ed. 542, *idem* 53 N. E. R. 874; Comm. v. Graves,
29 N. E. R. 579; State v. LePitre, 103 Pac. R. 27; Con-
necticut v. Reilly, 110 Atl. R. 552, 8 R. C. L. 275.

Judgment affirmed.

ELLIS, C. J. AND BROWN, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., con-
cur in the opinion and judgment.