636 So.2d 3 (1994)
Mark D. SCHWAB, Appellant,
v.
STATE of Florida, Appellee.
No. 80289.
Supreme Court of Florida.
March 3, 1994.
Rehearing Denied May 16, 1994.
*4 James B. Gibson, Public Defender, and Michael S. Becker, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Mark Schwab appeals his convictions of first-degree murder, sexual battery of a child, and kidnapping and his sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm Schwab's convictions and sentence.
Early in March 1991 Schwab was released from prison after serving three and one-half years of an eight-year sentence for committing sexual battery on a thirteen-year-old boy. In the middle of March a picture of eleven-year-old Junny Rios-Martinez appeared in a local newspaper. Several days later Schwab called the Rios-Martinez home, pretended to be a reporter, and claimed that he wanted to write an article on Junny. Schwab ingratiated himself with the family over the next several weeks, eventually claiming that he could get Junny a contract to represent a surfing company.
After school on April 18, 1991, a classmate saw Junny at a little league ball field and saw him get into a U-haul truck with a tall man. Two days later Schwab was in Ohio and called his aunt. He told her that someone named "Donald" had forced him to kidnap and rape the child or else Donald would kill Schwab's mother. On April 21 the police went to the aunt's home, and, when Schwab called while they were there, she allowed them to record the call. She also gave the officers permission to tap her telephone, and, when Schwab called later that evening, they traced the call and arrested him in a nearby town. Besides the recorded statements to his aunt, Schwab also gave statements to Sergeant Blubaugh, a Cocoa policeman, who flew to Ohio with assistant state attorney Chris White. The day after his arrest, Schwab, Blubaugh, and White flew back to Florida. Back in Brevard County Schwab eventually indicated where the victim's body could be found. The police then found the body in a rural, undeveloped area of the county, stuffed into a footlocker.
The state indicted Schwab for first-degree premeditated murder, sexual battery of a child, and kidnapping. Schwab waived a jury, and, after a week-long trial, the judge convicted him as charged. Following the penalty proceeding, the judge sentenced him to death.
After Schwab indicated he knew where the body was, he said to White: "I know you're a prosecutor, but you're also an attorney. Do you think I'm doing the right thing?" White responded that he thought the victim's parents would appreciate it if *5 Schwab could help find the body. Prior to trial, Schwab filed a motion to recuse the state attorney's office from the case, claiming that White's response constituted legal advice that created a conflict of interest and called into question the integrity of the judicial system. The trial court held a hearing on the motion to recuse and then denied it. Now, Schwab argues that the court erred in denying the motion. We disagree.
A defendant has no constitutional right to consult with a state attorney. Owen v. State, 596 So.2d 985 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 338, 121 L.Ed.2d 255 (1992). Schwab had been given and had waived his Miranda[1] rights several times in Ohio, and he was Mirandized again shortly after the exchange with White. He never, however, asked for an attorney. Schwab was well aware of the adversarial nature of criminal proceedings and knew that White was the state's counsel, not his. In spite of all this, he spoke to White voluntarily. After hearing both sides, the trial court concluded:
From what I heard today and what I've seen in your motion, I can see no legal basis at all or ethical basis to require the State Attorney at this juncture to be disqualified from the prosecution of this case.
We agree, reject the contention that White became Schwab's lawyer, and hold that the trial court did not err in denying the motion to recuse the state attorney's office.
Schwab also claims that his last statement to Sergeant Blubaugh should have been suppressed because his question to White invoked his right to counsel. The statement to White, however, was not a request for counsel. Blubaugh again read Schwab his Miranda rights before taking that last statement, and Schwab waived those rights. The trial court, therefore, did not err in refusing to suppress that statement.
Two months prior to trial someone calling himself "Doug"[2] sent a letter to Brian Onek, the assistant public defender who represented Schwab. The public defender's office turned the letter over to the state, and, on examination, Schwab's fingerprints were found on the letter.[3] The state filed notice that it would call five employees of the public defender's office[4] to testify to the chain of custody of the letter. Onek moved to withdraw as counsel and argued that, due to his relationship with his fellow employees, he would not be able to cross-examine them, thereby denying Schwab the effective assistance of counsel. The court denied the motion, and the state called the witnesses, who testified to their handling of the letter. Onek refused to cross-examine any of the witnesses, but the court questioned two of them.
Rule Regulating The Florida Bar 4-1.7(b) provides in part:
A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest.
Moreover, the opportunity to fully and completely cross-examine "critical witnesses is fundamental to a fair trial." Jennings v. State, 413 So.2d 24, 26 (Fla. 1982). These principles occasionally produce a conflict of interest that requires allowing a public defender to withdraw. E.g., Williams v. State, 622 So.2d 490 (Fla. 4th DCA 1993). To mandate withdrawal, however, the prejudice caused by continued representation must be more than de minimis, and the party seeking withdrawal bears the burden of demonstrating that substantial prejudice will result if withdrawal is not allowed. Ray v. Stuckey, *6 491 So.2d 1211 (Fla. 1st DCA 1986); Cazares v. Church of Scientology, 429 So.2d 348 (Fla. 5th DCA), review denied, 438 So.2d 831 (Fla. 1983).
Schwab has not met this burden. The witnesses' testimony went to establish the collateral matter of the letter's chain of custody. The facts establishing that custody had been set out in the motion to withdraw and were not in dispute. The witnesses testified to those facts as admitted, and, therefore, their credibility was not at issue. Any prejudice to Schwab came from the letter itself, not from the public defender's employees explaining their receipt and handling of the letter. Therefore, we find no merit to Schwab's argument that the trial court erred in denying the motion to withdraw.
Schwab moved for judgment of acquittal of the murder, sexual battery, and kidnapping charges, arguing that the state failed to prove the corpus delicti of those crimes independent of his statements. Schwab now argues that the trial court erred in denying those motions. We disagree.
The general order of proof is to show that a crime has been committed and then that the defendant committed it. Spanish v. State, 45 So.2d 753 (Fla. 1950); see State v. Allen, 335 So.2d 823 (Fla. 1976). "But in many cases the two elements are so intimately connected that the proof of the corpus delicti and the guilty agency are shown at the same time." Spanish, 45 So.2d at 754. Thus, the "evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together and inseparable on one foundation of circumstantial evidence." Cross v. State, 96 Fla. 768, 780-81, 119 So. 380, 384 (1928). A defendant's confession or statement "may be considered in connection with the other evidence," but "the corpus delicti cannot rest upon the confession or admission alone." Id. at 781, 119 So. at 384. Before a confession or statement may be admitted, there must be prima facie proof tending to show the crime was committed. Frazier v. State, 107 So.2d 16 (Fla. 1958); Cross; see Farinas v. State, 569 So.2d 425 (Fla. 1990); Bassett v. State, 449 So.2d 803 (Fla. 1984). Additionally, by the end of trial the corpus delicti must be proved beyond a reasonable doubt. Cross.
The state's proof met these standards. The medical examiner testified that the victim died from manual asphyxiation, most probably by strangling or smothering. The victim's nude body and the clothes that had been cut off him were found concealed in a footlocker[5] in a remote location. Cf. Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986). A wad of tape also found in the footlocker yielded a fingerprint identified as Schwab's. Witnesses testified that Schwab rented and returned the U-haul truck. Although the victim may have gone willingly with Schwab initially, the conclusion that at some point he was held against his will is inescapable. Cf. Sochor v. State, 619 So.2d 285 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 638, 126 L.Ed.2d 596 (1993); Bedford v. State, 589 So.2d 245 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992). The details in Schwab's statements correspond well with the physical evidence. Therefore, we hold that the state submitted sufficient proof of the corpus delicti to admit Schwab's admissions that he kidnapped and raped the victim. Moreover, all of the evidence proved beyond a reasonable doubt the corpus delicti of each of the charged crimes and that Schwab committed them.
Prior to trial the state served notice that it would present similar fact evidence through the testimony of three other young men that Schwab had attacked. The defense countered with a motion in limine to prevent the state from presenting this evidence, but the court deferred ruling on that motion until the state proffered the evidence at trial. After hearing the three witnesses' proffered testimony and arguments from both sides, the court found that the testimony was relevant to show identity, motive, and opportunity, *7 among other things, and that one witness' testimony rebutted Schwab's "Donald" story because of the timing of the incident. The court held that the testimony's probative value outweighed its prejudicial effect and allowed it into evidence. Schwab now argues that the evidence was irrelevant and became a feature of the trial and should not have been admitted.
Similar fact evidence that reveals other crimes is relevant and "admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality" and should be admitted if "relevant for any purpose save that of showing bad character or propensity." Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); Gore v. State, 599 So.2d 978 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992). There are significant similarities among the four incidents. The victims ranged from eleven to fifteen years of age and had similar physical attributes, i.e., all were short, had blond hair, and weighed less than one hundred pounds. Schwab ingratiated himself with the family of one of the witnesses, as he did with the instant victim, and attempted to befriend the others before offering them rides. He held each at knifepoint and admittedly cut the instant victim's clothes off with a knife. The major difference is that the instant victim, but not the others, was killed, but it is not required that the collateral crime "be absolutely identical to the crime charged." Gore, 599 So.2d at 984. When considered together, the common points form a sufficiently unique pattern so as to be admissible, and the trial court did not err in admitting the testimony of these witnesses. Moreover, the judge stated that "the State has presented a significant amount of other evidence and testimony that outweighs" the similar fact evidence so that such evidence could not become a feature of the trial. He further stated that he would consider the evidence only for the limited purposes relative to identity, motive, etc. There is no indication in the record that the judge did other than what he stated he would do. Therefore, we find no merit to this issue.
The record contains competent, substantial evidence supporting the convictions, and no reversible error occurred in the guilt phase of the trial. Therefore, we affirm Schwab's convictions of first-degree murder, sexual battery of a child, and kidnapping.
The trial court found that the following aggravators had been established beyond a reasonable doubt: previous conviction of a violent felony; committed during a kidnapping and sexual battery; and heinous, atrocious, or cruel. The trial court considered the statutory mitigators and forty items of allegedly nonstatutory mitigation, but found little in the tendered material actually to be of a mitigating nature or to have been established by the record. The court concluded its analysis by stating: "In weighing the aggravating and mitigating circumstances, the Court finds that any one of the three aggravating circumstances outweighs all mitigating circumstances." Schwab argues that his death sentence is not appropriate. We disagree.
The record supports all three aggravators. The state introduced Schwab's prior conviction of sexual battery, and the evidence supports his instant convictions of kidnapping and sexual battery of a child. We agree with the trial court's conclusion that the facts also demonstrate the murder to have been committed in a heinous, atrocious, or cruel manner.[6] The court cited to Rogers v. State, 511 So.2d 526 *8 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and Campbell v. State, 577 So.2d 932 (Fla. 1991), and conscientiously applied the dictates of those cases in analyzing the proposed mitigating evidence. We see no error in the trial court's findings of fact and agree that death is the appropriate penalty for this murder.
As his final point on appeal, Schwab argues that the heinous, atrocious, or cruel aggravator is unconstitutional. We have found no merit to this contention previously, e.g., Smalley v. State, 546 So.2d 720 (Fla. 1989), and refuse to reconsider this issue.
Therefore, we affirm Schwab's convictions and sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The record is unclear, but it appears that "Doug" and "Donald" are the same person.
[3] The letter was received while Schwab was in jail. His fingerprints being found on the letter seriously discredited his story that "Donald" forced him to rape the victim and that "Donald" must have killed the victim by casting grave doubt on the existence of "Donald" and bolstering the state's theory that Schwab had invented "Donald."
[4] Two secretaries, two investigators, and the office's executive director.
[5] A K-Mart sales slip for the purchase of a footlocker, dated April 18, 1991, was found in Schwab's car.
[6] The trial court's findings are as follows:

Junny Rios Martinez left Stradley ballfield with the defendant thinking he was with a trusted friend. The defendant drove the victim in a rented U-haul truck to his motel room. Once inside the room the defendant physically overcame the child and bound his hands with duct tape and placed the tape over his mouth. The defendant then violently cut the child's clothes off with a knife, rendering him naked and terrified. At the time, Junny Rios Martinez was five feet tall and weighed approximately 76 pounds. He was eleven years old. During this crime scenario, the defendant punched the child twice in the stomach. His head was covered for part of the time with a bed sheet or mattress cover. The child continued to cry and began to physically shake. He was subjected to being raped anally by the adult defendant. The defendant admitted that this rape caused the child pain. The rape continued until the defendant climaxed.
At no time did the defendant state that this child lost consciousness. In fact the contrary is shown. The defendant said that the child continued to cry even with the duct tape on his face. By the defendant's own account, this crime sequence involved a significant amount of time. At some point after the rape, the child was either strangled or smothered to death by the defendant.
It is impossible for this Court to contemplate another crime that would be more heinous, atrocious and cruel than the death of Junny Rios Martinez. The terror of the abduction and rape followed by the slow death of strangulation or suffocation was extreme. Such conduct is in fact heinous, atrocious and cruel.