689 So.2d 393 (1997)
Anthony WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-2301.
District Court of Appeal of Florida, Third District.
March 5, 1997.
*395 Bennett H. Brummer, Public Defender, and Brent E. Newton and Marti J. Rothenberg, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.
Before COPE, GERSTEN and SHEVIN, JJ.
SHEVIN, Judge.
Anthony Williams appeals a judgment of convictions for first degree felony murder and robbery of Barbara Meller Jensen, a German tourist visiting Miami. We affirm.
Williams raises several issues on appeal. We address each issue in turn. First, he raises as error the denial of his motions to recuse the trial judge based on her alleged bias in favor of the prosecution. The initial and amended motions asserted five grounds in support of recusal: 1. the trial court sua sponte offered a race-neutral reason upon Williams' objection to one of the state's peremptory strikes; 2. the court denied defense counsel's request to continue voir dire until the next day; 3. the court sua sponte objected to defense counsel's comments to the venire; 4. the court embarrassed defense counsel by sua sponte making and sustaining an objection to defense counsel's question to a prospective juror; and 5. the court denied defense counsel's request to address the court outside the prospective jurors' presence as to Williams' request for a stay to file a writ of prohibition. We find no error in the court's denials of the motions.
"A [recusal] motion is legally sufficient if it shows that the party making the motion has a well-grounded fear that he or she will not receive a fair trial from the presiding judge." Barwick v. State, 660 So.2d 685, 691 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); § 38.10, Fla. Stat. (1995); Fla. R. Jud. Admin. 2.160. The motion "must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." Jackson v. State, 599 So.2d 103, 107 (Fla.), cert. denied, 506 U.S. 1004, 113 S.Ct. 612, 121 L.Ed.2d 546 (1992). Applying this criteria to Williams' motions, ground one clearly does not set forth a basis for recusal. The record does not support Williams' contention that the court offered a race-neutral reason to justify the state's exercise of a peremptory challenge. Instead, the record indicates that the court made an innocuous inquiry concerning the prospective juror's availability to serve on the venire: the juror had stated that she was scheduled to begin nursing school shortly.[1] The court's question to the attorneys in an attempt to clarify the juror's availability does not demonstrate prejudice. See Pope v. Wainwright, 496 So.2d 798, 802 (Fla.1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). Cf. Chastine v. Broome, 629 So.2d 293 (Fla. 4th DCA 1993)(judge's ex parte cross-examination tip to prosecutor sufficient to demonstrate bias). Furthermore, Williams does not challenge the propriety of permitting the state to exercise the challenge. See Nassetta v. Kaplan, 557 So.2d 919, 920 (Fla. 4th DCA 1990).
The remaining grounds for recusal asserted by Williams merely denote a dissatisfaction with the trial court's rulings rather *396 than evidence of the judge's bias in favor of the prosecution or prejudice against defense counsel. It is well-settled law that a judge's adverse rulings may not serve as a sufficient basis for recusal. Barwick, 660 So.2d at 692; Jackson, 599 So.2d at 107; Provenzano v. State, 616 So.2d 428, 432 (Fla.1993); Gilliam v. State, 582 So.2d 610, 611 (Fla.1991); Tafero v. State, 403 So.2d 355, 361 (Fla.1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); Heier v. Fleet, 642 So.2d 669 (Fla. 4th DCA 1994). Furthermore, it is within the province of the court to interject itself, without objection, albeit rarely, into voir dire examination concerning counsel's questions or comments. Brown v. State, 678 So.2d 910, 913 (Fla. 4th DCA 1996). See Oglesby v. State, 156 Fla. 481, 23 So.2d 558, 559 (1945). The record in this case reveals that the court sua sponte objected to a comment and a question by defense counsel to the prospective jurors during voir dire. Those actions, without more, do not demonstrate that the court departed from its proper position of neutrality, where, as here, the court properly exercised its authority without harshness or repeated interjections. See Jackson v. State, 545 So.2d 260, 264 (Fla. 1989); Pope v. Wainwright, 496 So.2d at 802, and cited cases. See generally Williams v. State, 143 So.2d 484, 488 (Fla.1962). Thus, the court correctly denied the recusal motions as legally insufficient.[2]
Second, Williams argues that the state did not present a prima facie corpus delicti of the felony murder or robbery charge thereby precluding admission of Williams' confession. The state sought to admit into evidence Williams' confession describing his participation in the crime. In his statement to police, Williams admitted driving a friend's car and intentionally bumping the victim's car in order to rob her. He stated that the victim stopped and exited her vehicle to examine the damage. At that point, two passengers got out of Williams' car and grabbed the victim's purse. When the assailants returned to the car, the victim grabbed the door handle of Williams' car. Williams then backed up the car, drove forward, and felt the car sway from side to side as if it had run over something. Williams continued driving and when he looked in the rear-view mirror, he saw the victim lying on the ground. Williams then drove to a canal where the assailants searched the purse, filled the purse with rocks, and threw it into the canal. Williams directed the police to that canal, and the police retrieved the victim's purse.
"An individual's confession to a crime is insufficient evidence of a criminal act where no independent evidence exists to substantiate the occurrence of the crime." Sochor v. State, 580 So.2d 595, 600 (Fla.1991), judgment vacated on other grounds, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992). In addition, "[a] defendant's confession or statement `may be considered in connection with the other evidence,' but `the corpus delicti cannot rest upon the confession or admission alone.'" Schwab v. State, 636 So.2d 3, 6 (Fla.)(quoting Cross v. State, 96 Fla. 768, 781, 119 So. 380, 384 (1928)), cert. denied, 513 U.S. 950, 115 S.Ct. 364, 130 L.Ed.2d 317 (1994). Therefore, the state must introduce substantial independent evidence of corpus delicti that tends to show that the charged crimes were committed. Farinas v. State, 569 So.2d 425, 430 (Fla.1990); Thomas v. State, 531 So.2d 708, 711 (Fla.1988). A prima facie corpus delicti serves to ensure "[t]he judicial quest for truth [which] requires that no person be convicted out of derangement, mistake or official fabrication." State v. Allen, 335 So.2d 823, 825 (Fla.1976); Burks v. State, 613 So.2d 441, 443 (Fla.1993).
The corpus delicti for homicide requires independent direct or circumstantial proof of three elements: a person's death, the criminal agency of another as the cause, *397 and the identity of the victim. McKinney v. State, 579 So.2d 80, 82-83 (Fla.1991); Farinas, 569 So.2d at 430; Meeks v. State, 339 So.2d 186 (Fla.1976); Davis v. State, 582 So.2d 695 (Fla. 1st DCA 1991); Ruiz v. State, 388 So.2d 610, 611 n. 2 (Fla. 3d DCA 1980), review denied, 392 So.2d 1380 (Fla.1981); Reyes v. State, 155 So.2d 663 (Fla. 3d DCA 1963). The record reveals ample evidence of the victim's identity, her death, and that the victim's death was caused by the criminal agency of another.
The state presented evidence that the victim, a tourist from Germany, arrived at Miami International Airport and rented a car at an airport car rental agency; a short time later her car was bumped by another car, and she exited the car; at that time, she sustained a crushing head injury when a car ran over her head; her wallet was found on the ground near her body;[3] her address labels were found in a blue Cadillac; and her missing purse was found loaded with stones in a canal. Thus, the record contains evidence that tends to show that the perpetrators bumped the victim's car in order to rob her and that she was run over and killed as the car left the scene. Furthermore, Williams' confession "correspond[s] well" with the physical evidence: the victim's head had been run over by a car tire, and the victim's purse was found filled with stones in a canal. Schwab v. State, 636 So.2d at 6. Although some of the evidence is circumstantial, it is not, as Williams suggests, equally or more likely that the death was caused by a noncriminal car accident. Circumstantial evidence by its nature, is subject to diverging interpretations. However, in this case, the evidence is "sufficient to negate all reasonable defense hypotheses as to cause of death and show beyond a reasonable doubt that the death was caused by the criminal agency of another person." Golden v. State, 629 So.2d 109, 111 (Fla.1993). See Davis v. State, 582 So.2d at 700 (unnecessary to negate all noncriminal explanations before admitting confession); Hester v. State, 310 So.2d 455, 457 (Fla. 2d DCA 1975). Therefore, the record establishes that the state presented prima facie corpus delicti evidence of felony murder.
In addition, this evidence establishes the corpus delicti of robbery. Contrary to Williams' contention, there is sufficient evidence permitting the inference that the assailants robbed the victim of her purse, either from her car or her person when she exited her car, and that the force used to effect the robbery occurred at that time. Therefore, the state has shown that the victim suffered the type of harm contemplated by the robbery charge and that the harm was caused by the criminal agency of another. See State v. Allen, 335 So.2d at 825; Knight v. State, 402 So.2d 435 (Fla. 3d DCA 1981). See also Kearse v. State, 662 So.2d 677, 685 (Fla.1995). Hence, reversal on this basis is inappropriate. Because the state presented independent evidence of corpus delicti, we conclude that the court properly admitted Williams' confession.
Williams' third contention is that he is entitled to a new trial because the judge failed to inquire into allegations of juror misconduct. Williams requested a jury inquiry based on an article which appeared in the Miami Herald. The article stated that several jurors glared at Williams and his co-defendant and a female juror started to cry during the testimony of the victim's husband. The article did not identify the jurors, did not indicate whether they were members of Williams' venire or his codefendant's venire,[4] nor did it state that other jurors noticed these reactions. Neither the judge nor defense counsel observed the jurors' alleged reactions to the testimony. The court denied Williams' inquiry request. Williams did not make any proffer of the jurors' identification at that time or before the trial was completed.
*398 We find that the court did not abuse its discretion in failing to conduct an inquiry. It is within the court's sound discretion to deal with the conduct of the jurors. Gore v. State, 475 So.2d 1205, 1205 (Fla.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986); Doyle v. State, 460 So.2d 353, 357 (Fla.1984); Walker v. State, 330 So.2d 110, 112 (Fla. 3d DCA), cert. denied, 341 So.2d 1087 (Fla.1976). The record here does not establish that the alleged events actually occurred or that the jurors involved were members of Williams' venire. Williams did not proffer the jurors' identities or any basis for inquiry other than a newspaper article. The record only establishes that jurors may have started to cry or glared at Williams during properly admitted evidence. The court is not required to accede to requests to conduct a jury inquiry based on mere speculation. See Shere v. State, 579 So.2d 86 (Fla.1991). Furthermore, the court instructed the jury that its verdict must be based on the evidence and the law; that they should not discuss feelings of prejudice, bias or sympathy; and that the verdict must not be influenced by emotion or sympathy. Therefore, Williams has not demonstrated an abuse of discretion. See Hooker v. State, 497 So.2d 982, 984 (Fla. 2d DCA 1986)(trial court's refusal to conduct juror inquiry after defense counsel overheard a juror comment to another juror about the case not reversible error), review denied, 506 So.2d 1041 (Fla. 1987); Murray v. State, 356 So.2d 71, 72 (Fla. 1st DCA 1978)(court did not abuse its discretion in denying interview of juror crying during polling of jury); State v. Grice, 109 N.J. 379, 537 A.2d 683, 687 (1988)(trial court's failure to examine or excuse juror who cried during victim's testimony not reversible error).[5]
Fourth, Williams contends that the trial court erred in permitting the state to cross-examine Officer Ramieres about statements made by Alexander Jensen, the victim's son. Alexander, who was six years old when the incident occurred, was an eyewitness to the robbery and death of his mother. Officer Ramieres testified as a defense witness that Alexander knew his colors and that he had stated that the assailants' car was gold. Over defense objection, the court permitted the state to elicit on cross-examination the remainder of Alexander's statement in which he described the crime: after his car was bumped, Alexander observed a car passenger taking his mother's purse, slamming her to the ground, and the car driving over his mother.[6]
We find that Williams' argument has no merit. Under the "rule of completeness," § 90.108(1), Fla. Stat. (1995), the court properly permitted the introduction of the remainder of Alexander's statement "to avoid the potential for creating misleading impressions by taking statements out of context." Larzelere v. State, 676 So.2d 394, 401 (Fla.), cert. denied, ___ U.S. ___, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). The admission of such testimony is subject to a judicial determination that the statements "`in fairness ought to be considered contemporaneously' with the introduction of the partial statement." Id. at 402 (quoting § 90.108(1)). By introducing Alexander's identification of the car's color as gold, the defense opened the door thereby entitling the state to cross-examine the witness about other relevant contemporaneous statements. Id. at 401-402; Johnson v. State, 653 So.2d 1074, 1075 (Fla. 3d DCA 1995); Eberhardt v. State, 550 So.2d 102, 105 (Fla. 1st DCA 1989), review denied, 560 So.2d 234 (Fla.1990). Alexander's statements introduced by the state demonstrated to the jury that the credibility of his recollection of the car's color may have been suspect in light of his actual observation of the entire traumatic event. See § 90.608(4), Fla. Stat. (1995). Accordingly, we hold that the trial court did not abuse its discretion in permitting the officer's testimony.
Next, Williams argues that he is entitled to a new trial by virtue of the state's *399 improper closing argument. In closing argument, the prosecutor stated:
Let's talk about Alexander Jensen for a moment. Alexander [is] six years old. What could be a more tragic horrible event? What would be more egregious than the loss of a parent? What's even worse than that is witnessing the loss of a parent. You're six years old. [T.3635-3636.]
The trial court overruled Williams' objection that such comment constituted an impermissible "golden rule" argument. In general, a "golden rule" argument encompasses requests that the jurors place themselves in the victim's position, that they imagine the victim's pain and terror, or that they imagine that their relative was the victim. Davis v. State, 604 So.2d 794, 797 (Fla.1992); Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985); Adams v. State, 192 So.2d 762 (Fla.1966); Worden v. State, 603 So.2d 581 (Fla. 2d DCA), review denied, 613 So.2d 13 (1992); Shaara v. State, 581 So.2d 1339 (Fla. 1st DCA 1991); Clark v. State, 553 So.2d 240 (Fla. 3d DCA 1989); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979)(on rehearing), cert. denied, 386 So.2d 642 (Fla.1980). See Rhodes v. State, 547 So.2d 1201 (Fla. 1989). We disagree with Williams' contention that the argument here constitutes a "golden rule" argument. "The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Bertolotti, 476 So.2d at 134. Here, the state properly asked the jury to understand the circumstances of the child witness's viewing of the crime as a plausible explanation of Alexander's confusion as to the car's color. The argument was not a plea for the jury to abandon its obligation to determine the case based solely on the evidence and to place itself in the victim's position. However, assuming, arguendo, that the statement could be construed as an improper reference to Alexander's suffering, the isolated comment was harmless and does not mandate a new trial. Williams v. State, 544 So.2d 1114, 1115 (Fla. 3d DCA 1989)("state's single reference during closing argument to the tears of the [murder] victim's parents was an improper appeal to the sympathy of the jury" but not reversible error).
Sixth, Williams argues that the trial court abused its discretion in permitting the state to recall Willard Delancy, a crime-scene investigator, to testify after he had already testified as both a state and defense witness. During the defense case, Delancy testified that "yellow or gold paint" was scraped from the bumper of the victim's red rental car.[7] It was the defense's contention that the assailants drove a gold car rather than the blue car that Williams drove. After he testified, the state requested that Delancy look at the actual paint scrapings. Then after the defense rested, the state recalled Delancy as a witness and introduced the paint scrapings in evidence through his testimony. Delancy testified that he had once again looked at the scrapings at the police property office and that his testimony that the scrapings contained gold paint was incorrect: that no foreign paint was found on the victim's rental car.
The court has discretion to grant or deny a request to recall or reexamine a witness. Tafero; Hampton v. State, 680 So.2d 581, 584 (Fla. 3d DCA 1996); Dawson v. State, 401 So.2d 819 (Fla. 1st DCA), review denied, 408 So.2d 1092 (1981). Williams has made no showing that the trial court abused its discretion in permitting this testimony. Thus, we decline to disturb this ruling on appeal.[8] Assuming, arguendo, that the admission of the testimony was error, the error is harmless in light of the other evidence adduced against Williams.
We find no merit in Williams' final point regarding the trial court's failure to suppress his confession. The alleged error *400 is not preserved for review where, as here, Williams did not present the argument asserted on appeal to the trial court. See State v. Osvath, 661 So.2d 1252 (Fla. 3d DCA 1995). Furthermore, the record does not indicate that the police deceived Williams in obtaining his confession. Williams was in custody on an unrelated robbery charge when the detectives told him that they wanted to discuss a "case" with him. Williams stated that he knew that the police were taking him to the homicide office when he got into the elevator with the officers. Accordingly, we find no error in the trial court's ruling.
Based on the foregoing reasoning, we affirm the judgment in all respects.
Affirmed.
NOTES
[1] When defense counsel requested a Neil inquiry, the judge stated, "I believe the inquiry about the need to be in Tallahassee needs to be clarified for the Court. The attorneys have a recollection, she was going to start school at that time." [T.1398] The state addressed the court's concern and then offered its reasons for the challenge. Defense counsel asserted that the court had "take[n] over for the state" [T.1400] when it granted the strike based on the hardship factor and the cases cited by the state.
[2] Furthermore, despite the court's rulings on the motions, Williams received the desired relief. Before opening argument, the trial judge was reassigned administratively, and a successor judge conducted the trial. Upon presiding over the trial, the successor judge asked the attorneys whether "there [is] anything that you think that you should let me know about, any pretrial motions that would effect opening." [T.2025]. At that time, defense counsel did not raise any issue as to whether the jury was tainted. Therefore, Williams' contention on appeal, that the predecessor judge's rulings improperly affected the composition of the jury, is waived. See Murphy v. State, 627 So.2d 51, 52 (Fla. 3d DCA 1993), review denied, 637 So.2d 236 (Fla.1994).
[3] A witness testified that in the vicinity of the body "there was an object that appeared to be like a wallet, which I asked my wife to motion to the older lady [victim's mother] to pick up, which she did." T. 2141. Another witness testified that the victim's mother had her daughter's wallet. T. 2188-2189.
[4] Although Williams and his co-defendant were tried jointly, each defendant had a separate jury panel.
[5] Although the court granted the co-defendant's request to proffer the reporter's deposition, it does not appear that a deposition was taken.
[6] We note that Williams had introduced Alexander's deposition testimony in which he stated that three men were involved in the crime and that they took his mother's purse from her when she exited the car.
[7] In his pre-trial deposition Delancy merely stated that foreign paint was removed from the back of the victim's car. He did not remember the paint color.
[8] We also note that after the court stated that the state could introduce the paint scrapings through this witness or another witness, defense counsel responded by stating that the court "[l]et them offer it through another witness." [T. 3443]. Therefore, Williams should not complain about the admission of the paint scrapings which did not contain any gold paint.